UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALBERT DE LEON, JR., Petitioner, v. JAMES D. HARTLEY, Warden, Respondent. | ) | 1:11-cv—01063-LJO-BAM-HC<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS THE PETITION (DOCS. 14, 1)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS THE PETITION WITHOUT LEAVE TO AMEND (DOC. 1), DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DIRECT THE CLERK TO CLOSE THE ACTION |

Petitioner is a state prisoner proceeding with the assistance of counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is Respondent's motion to dismiss the petition, which was filed on August 30, 2011. Petitioner filed opposition on September 14, 2011, and Respondent filed a reply on September 21, 2011. Pursuant to Local Rule 230(l), the motion is submitted on the record without oral argument.

///

I. Proceeding by a Motion to Dismiss

Because the petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies to the petition. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts (Habeas Rules) allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court...."

The Ninth Circuit has allowed respondents to file motions to dismiss pursuant to Rule 4 instead of answers if the motion to dismiss attacks the pleadings by claiming that the petitioner has failed to exhaust state remedies or has violated the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss a petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 to review a motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D.Cal. 1982) (same).

Thus, a respondent may file a motion to dismiss after the Court orders the respondent to respond, and the Court should use Rule 4 standards to review a motion to dismiss filed before a formal answer. See, Hillery, 533 F. Supp. at 1194 & n.12.

In this case, upon being directed to respond to the petition by way of answer or motion, Respondent filed the motion to dismiss. The material facts pertinent to the motion are to be found in the pleadings and exhibits provided by the parties, and there is no factual dispute as to the pertinent facts. Because Respondent's motion to dismiss is similar in procedural standing to motions to dismiss on procedural grounds, the Court will review Respondent's motion to dismiss pursuant to its authority under Habeas Rule 4.

II. Background

Petitioner alleges that he is an inmate of the Avenal State Prison who is serving a sentence of twenty-seven (27) years to life imposed in the Superior Court of the State of California for the County of San Bernardino, on March 10, 1983, upon Petitioner's conviction of first degree murder and robbery with use of a firearm in violation of Cal. Pen. Code §§ 211, 187, and 12022.5. (Pet. 9.) Petitioner challenges the decision of California's Board of Parole Hearings (BPH) made after a hearing held on August 26, 2009, finding Petitioner unsuitable for parole. (Id. at 9, 13.)

Petitioner alludes to having raised in state court a claim that the denial of parole violated his right to due process of law because the decision was arbitrary and unsupported by some evidence that Petitioner presented a risk to public safety if

released. (Pet. 13.) However, Petitioner recognizes that after the decision of the United States Supreme Court in Swarthout v. Cooke, 562 U.S. –, 131 S.Ct. 859, 861-62 (2011), this claim is foreclosed because it concerns evidentiary sufficiency under California's "some evidence" standard. (Pet. 14-15.) In Swarthout, the Court determined that California's "some evidence" rule is not a substantive federal requirement, and correct application of California's "some evidence" standard is not required by the federal Due Process Clause. Id. at 862-63.

The sole claim raised in the petition before this Court is that Petitioner's due process right to an impartial tribunal at his parole suitability hearing was violated by the BPH's bias.

Petitioner alleges that he was denied parole on five occasions. Although he acknowledges that the reasons for denial are not at issue because such review is foreclosed by Swarthout v. Cooke, Petitioner asserts that the reasons for denial of his parole were "talismanic and arbitrary." (Pet. 9:22-24.)

Reference to the transcript of Petitioner's parole hearing reflects that Petitioner waived his right to review his "C-File" before the hearing, appeared at the hearing, chose to represent himself, submitted documents to the BPH, answered extensive questions, had an opportunity to clarify the record, made a statement to the BPH in support of his application, and was present when the BPH explained the reasons for the finding that Petitioner was unsuitable for parole. (Pet., Ex. 11, 1, 3, 10, 1-51, 58-59, 61-72.) At the start of the hearing, Petitioner stated he had no preliminary objections. (Id. at 9.) Petitioner did not enter any objection or seek any relief from the panel on

the ground of bias or unfairness of either the BPH or the specific panel members who presided over his hearing.

Petitioner committed the murder of a gas station attendant to show his gang associates that he was "bad" and was doing the things they were doing. (Id. at 13.) When Petitioner asked for money, the victim grabbed Petitioner's shotgun, and after a struggle, Petitioner shot the man. (Id.) Petitioner denied having rifled through the dead victim's pockets, as a witness had observed. (Id. at 22-24.) Petitioner disposed of the gun and fled. (Id. at 25.) Petitioner admitted that when he killed the victim, he had been under the influence of heroin, alcohol, weed, PCP, and a pill. (Ex. 11, 11.) Petitioner's criminal history included previous juvenile adjudications of battery and robbery, multiple instances of driving while intoxicated and without a license, and being under the influence of an opiate. (Id. at 29-30.)

The BPH denied parole on the basis of weighing the considerations provided in title 15 of the California Code of Regulations, relying on the callous, atrocious, and cruel nature of the offense; the vulnerability of the victim; the Petitioner's prior criminality; his unstable social history of gang activity and failure on probation; his continued lack of insight and minimization of his responsibility for the offense by claiming that the victim grabbed the gun; and a psychological report that was not totally supportive of release. The BPH expressly concluded that although Petitioner had controlled his behavior in prison for many years, completed four units of a literacy program, earned a GED, completed multiple rounds of vocational

training, participated in AA and NA when available, and developed realistic parole plans, the factors of unsuitability nevertheless "heavily" outweighed the positive aspects of Petitioner's case. (Ex. 11, 61-72.)

Petitioner argues that the state of California has failed to articulate, interpret, and construe Cal. Pen. Code § 3041, the California statute governing parole, in a manner that would avoid gross misapplication of the statute by the BPH because the BPH has reversed the "presumptive liberty interest in parole" by making a grant of parole the exception and not the rule, thereby unfairly and unconstitutionally depriving life prisoners of their liberty interests and rendering the parole suitability hearings per se invalid. (Pet., 10:19-23.) Petitioner alleges that the outcome of the proceedings are preordained "to an unconstitutional degree by an institutionalized bias against the granting of parole." (Id. at 10:25-26.) Petitioner argues that the BPH construes § 3041 to presume that life prisoners are unsuitable for parole, and it "engages a *sub rosa* policy against granting parole and uses *sub rosa* criteria that are not valid under the statute or promulgated under the pertinent administrative procedures in Cal. Govt. Code § 11340.5." (Id. at 11:9-12.) Petitioner contends that the policy results in the creation of an institutionalized bias against granting parole that is unconstitutional in light of the presumptive liberty interest in parole stated in Cal. Pen. Code § 3041. (Id. at 11:12-16.)

Petitioner submitted extensive exhibits which demonstrate that in the last twenty years, the percentage of life prisoners

found suitable for parole has decreased, and the time spent in custody before release on parole has increased. The great majority of applications for parole are denied.

Petitioner seeks resolution of the legal issues, definition of the pertinent law, an order requiring the BPH to comply with the law, and a re-hearing of Petitioner's parole application in compliance with the law as stated by this Court. (Id. at 11:17-19.) Petitioner specifically seeks findings that 1) the BPH's denials of the vast majority of parole applications constitute non-compliance with the California statute, 2) the BPH has exceeded its authority under the statute and has failed to comply with the statutory command; 3) the BPH's denials constitute an institutionalized bias against granting parole that deprives life prisoners of their substantial liberty interests in parole; and 4) the BPH's practices and policy unconstitutionally infect the parole proceedings with an unlawful, institutionalized bias against granting parole that deprives the inmate of a fair, impartial, and neutral decision maker. (Id. at 11-12.) Petitioner also seeks discovery to support the statistical record submitted here that Petitioner represents shows that the BPH denies parole in 95 percent to 99.9 percent of all applications. (Id. at 12.)

III. Failure to State a Cognizable Due Process Claim of Bias

A. Legal Standards

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation

of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).

A fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136 (1955). California inmates have a due process right to parole consideration by neutral, unbiased, disinterested decision makers. O'Bremski v. Maass, 915 F.2d 418, 422 (9th Cir. 1990). Because parole board officials perform tasks that are functionally comparable to those performed by the judiciary, they owe the same duty owed by the judiciary to render impartial decisions in cases and controversies that excite strong feeling because the litigant's liberty is at stake. Id.

Fairness requires an absence of actual bias and of the probability of unfairness. Id. at 136. Bias may be actual, or it may consist of the appearance of partiality in the absence of actual bias. Stivers v. Pierce, 71 F.3d 732, 741 (9th Cir. 1995). A showing that the adjudicator has prejudged, or reasonably appears to have prejudged, an issue is sufficient. Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992).

However, there is a presumption of honesty and integrity on the part of decision makers which may be overcome by evidence of a risk of actual bias or prejudgment based on special facts and circumstances. Withrow v. Larkin, 421 U.S. 35, 46-47, 58 (1975).

The mere fact that a board denies relief in a given case or has denied relief in the vast majority of cases does not demonstrate bias. Stivers v. Pierce, 71 F.3d at 742. This is

because unfavorable judicial rulings alone are generally insufficient to demonstrate bias unless they reflect such extreme favoritism or antagonism that the exercise of fair judgment is precluded. Liteky v. United States, 510 U.S. 540, 555 (1994).

Although the vast majority of parole applications may be denied, where the record demonstrates that the parole authority considered the pertinent factors in an individual case and rested its decision on pertinent factors disclosed in the record, and where there is an absence of evidence that the authority was biased by a no-parole policy during the hearing or that parole was denied because of a no-parole policy, the petitioner has not shown that the parole authority was biased. Orozco v. Clark, 705 F.Supp.2d 1158, 1174-75 (C.D.Cal. 2010); Brazil v. Davison, 639 F.Supp.2d 1129, 1154-57 (C.D.Cal. 2009). Vague allegations of such a policy coupled with statistical evidence of denials of parole in almost all cases is insufficient to establish a violation of due process based on the existence of such a policy where in the individual case, the record reflects that the denial of parole was derived from the BPH's evaluation of the prisoner's suitability at the time of the hearing. Brazil v. Davison, 639 F.Supp.2d at 1156-57. Such a claim is too vague, conclusory, and lacking in adequate factual and legal support to establish a basis for federal habeas relief. Id. at 1157.

Even in the more procedurally demanding context of parole revocation, the neutrality requirement is satisfied if the revocation decision is made by someone such as a parole officer other than the one who reported the parole violations or recommended revocation. Morrissey v. Brewer, 408 U.S. 471, 486

(1972). Neutrality does not require employment by a different agency, a law degree, or election or appointment as a judicial officer. Id. Thus, where the members of the BPH who denied a parole application were not responsible for the prisoner's arrest or prosecution, had not stated before the hearing that they considered the prisoner unfit for release, and based their decision on an individualized assessment of the prisoner's circumstances, no bias was established. Brazil v. Davison, 639 F.Supp.2d at 1158-59.

B. Analysis

There is no showing that the BPH was actually biased or appeared to be unfair. To the contrary, the transcript of the hearing reflects that the panel considered, and inquired of Petitioner concerning, many individualized, discretionary factors affecting the decision concerning parole suitability; weighed the various factors; and, after affording Petitioner all process to which he was due, rendered a decision based on the pertinent factors. In these circumstances, evidence that the vast majority of all parole applications have historically been denied does not demonstrate that fair consideration was precluded or otherwise establish the existence of a policy against the granting of parole. There is no record evidence that in the present case, the BPH was operating pursuant to, or was influenced by, such a policy. There is no evidence that the BPH prejudged the case.

It is concluded that Petitioner has not overcome the presumption that the BPH was acting honestly and with integrity. Petitioner has not alleged facts that would warrant relief on the basis of a due process violation of a biased tribunal in a

proceeding pursuant to 28 U.S.C. § 2254.

C. Substantive Due Process

It is unclear, but Petitioner may be arguing that Swarthout v. Cooke does not govern his due process claims because he bases his claims concerning his liberty interest in parole not simply on California law, but rather on the United States Constitution. However, it is established that even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke, 131 S.Ct. at 861-62). In Swarthout v. Cooke, the Court unequivocally determined that the Constitution does not impose on the states a requirement that its decisions to deny parole be supported by a particular quantum of evidence, independent of any requirement imposed by state law. Roberts v. Hartley, 640 F.3d at 1046; Pearson v. Muntz, 639 F.3d 1185, 1191 (9th Cir. 2011). A state's misapplication of its own laws does not provide a basis for granting a federal writ of habeas corpus. Roberts v. Hartley, 640 F.3d at 1046.

Further, it is recognized that there is no substantive due process right created by California's parole scheme; if the state affords the procedural protections required by Greenholtz and Cooke, the Constitution requires no more. Roberts v. Hartley, 640 F.3d at 1046.

D. State Law Claims

Petitioner's claim that the BPH's decisions deprive him of a liberty interest is based in part on an assertion that both the BPH and the California courts which have upheld the BPH's

decisions are inappropriately construing, applying, and narrowing the scope of the state statute that provides for release on parole.

To the extent that Petitioner is asserting that the California courts' interpretation of the statute is unauthorized or incorrect, Petitioner does not state a claim cognizable in this proceeding. Federal habeas relief is available to state prisoners only to correct violations of the United States Constitution, federal laws, or treaties of the United States. 28 U.S.C. § 2254(a). Federal habeas relief is not available to retry a state issue that does not rise to the level of a federal constitutional violation. Wilson v. Corcoran, 562 U.S. — , 131 S.Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Alleged errors in the application of state law are not cognizable in federal habeas corpus. Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002) (an ex post facto claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

Further, this Court accepts a state court's interpretation of state law. Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996). In a habeas corpus proceeding, this Court is bound by the California Supreme Court's interpretation of California law unless it is determined that the interpretation is clearly untenable and amounts to a subterfuge to avoid federal review of a deprivation by the state of rights guaranteed by the Constitution. See, Mullaney v. Wilbur, 421 U.S. 684, 691 n.11

(1975); Murtishaw v. Woodford, 255 F.3d 926, 964 (9th Cir. 2001).

Here, the record reflects that numerous life prisoners have been and are being released on parole. There is no indication of any radical departure from past practice. In the case of the present petitioner, the BPH decided the issue of parole suitability by applying pertinent state law and evaluating pertinent factors based on an individualized consideration of the facts. There is no basis for an inference that the decision of the state court upholding the BPH's decision of unsuitability involved an untenable construction of Cal. Pen. Code § 3041(b), which provides that the BPH panel or the board sitting en banc "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration...." The record shows that the BPH expressly determined that Petitioner was unsuitable because he presented an unreasonable risk of danger if released based on a consideration of the regulatory factors, including the gravity of the commitment offense and the Petitioner's criminal history. (Doc. 1-12, 64-66.)

Further, no subterfuge to evade consideration of a federal issue appears in the record.

The cases from this circuit cited by Petitioner in his opposition[1] concerning rare, constitutional issues presented by a

---

[1] Petitioner cites, among other cases, Oxborrow v. Eikenberry, 877 F.2d 1395 (9th Cir. 1989) (sentencing statute); Knapp v. Cardwell, 667 F.2d 1253, 1260 (9th Cir. 1982) (sentencing statute); Clark v. Brown. 450 F.3d 898 (9th Cir. 2006) (statute rendering criminal defendant eligible for the death

state court's construction or application of a state criminal statute are not analogous to the present case. The Ninth Circuit cases follow Bouie v. City of Columbia, 378 U.S. 347, 350-54 (1964), in which the Court condemned the construction of a statute that prohibited entry on another's land with notice that one was not to enter as also including the conduct of remaining on the land after a request to depart. It was held that due process prohibits retroactive application of any judicial construction of a criminal statute that is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in question. Id.

The two basic constitutional principles offended by the state court's construction in Bouie included the due process requirement of notice and the protection against ex post facto laws. The Due Process Clause demands that a criminal statute give fair warning of the conduct that it makes a crime. A criminal statute must be sufficiently definite to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute; a criminal statute may not either forbid or require the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. The requirement of notice, however, may be offended not only by a statute's vague or uncertain terminology, but also by judicial construction of a

---

penalty); Brown v. Palmateer, 379 F.3d 1089 (9th Cir. 2004) (retroactive application of statute lessening the standard for postponement of parole); and Webster v. Woodford, 369 F.3d 1062 (9th Cir. 2004) (elements of robbery and special circumstances of murder).

statute that is narrow and precise on its face but which by construction has been unforeseeably and retroactively expanded. Such a defect in notice can be particularly pernicious because it does not simply present a vagueness or uncertainty, but rather is affirmatively misleading as to the conduct covered by the statute. Id. at 352-53.

Because the state's judicial construction of a criminal statute is generally not revealed until the decision of the state court is rendered, the construction is applied after the occurrence of the conduct sought to be punished as criminal. In this sense, the construction is applied retroactively. It thus may be contended that the construction operates as an ex post facto law because it criminalizes an otherwise innocent action done before the passing of the law or increases punishment for such conduct. Id. at 353.

Here, the enactment that was the subject of the allegedly unconstitutional construction is not a statute defining a criminal offense or sentence, but rather one which, along with related state statutes and regulations, empowers the BPH to consider multiple factors of suitability and to exercise discretion in determining parole suitability. Petitioner's interests are not comparable to the liberty interest of a person charged with a criminal offense; on the contrary, as previously noted, it is established that even where state law creates a liberty interest in parole, there is no federal right to be conditionally released before the expiration of a valid sentence. Roberts v. Hartley, 640 F.3d 1042, 1045 (9th Cir. 2011) (citing Swarthout v. Cooke, 131 S.Ct. at 861-62). Further, the

application of the parole statute presents no risk of uncertainty with respect to the conduct included within the scope of a statute imposing criminal liability. Likewise, because neither criminal liability nor criminal punishment is expanded by the challenged construction or application, there is no ex post facto problem.

The Court concludes that Petitioner's allegations concerning the BPH's allegedly narrow and restrictive construction or application of § 3041 do not point to a real possibility of constitutional error. In connection with this claim or sub-claim, Petitioner has not alleged facts that would entitle him to relief in a proceeding pursuant to 28 U.S.C. § 2254.

A petition for habeas corpus should not be dismissed without leave to amend unless it appears that no tenable claim for relief can be pleaded were such leave granted. Jarvis v. Nelson, 440 F.2d 13, 14 (9th Cir. 1971).

Here, Petitioner has set forth the entire transcript of the parole proceedings, which reflects that he received all process that was due. The defect in Petitioner's due process claim relating to the construction of Cal. Pen. Code § 3041 relates to the nature of the claim and not to any dearth of allegations of specific facts. Granting leave to amend would be futile.

Accordingly, it will be recommended that the motion to dismiss be granted, and the petition be dismissed without leave to amend.

IV. Certificate of Appealability

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals

from the final order in a habeas proceeding in which the detention complained of arises out of process issued by a state court. 28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). A certificate of appealability may issue only if the applicant makes a substantial showing of the denial of a constitutional right. § 2253(c)(2). Under this standard, a petitioner must show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Miller-El v. Cockrell, 537 U.S. at 336 (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)). A certificate should issue if the Petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in any procedural ruling. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of the claims in the habeas petition, generally assesses their merits, and determines whether the resolution was debatable among jurists of reason or wrong. Id. It is necessary for an applicant to show more than an absence of frivolity or the existence of mere good faith; however, it is not necessary for an applicant to show that the appeal will succeed. Miller-El v. Cockrell, 537 U.S. at 338.

A district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could debate whether the petition should have been resolved in a different manner. Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline to issue a certificate of appealability.

V. Recommendation

In summary, Petitioner has failed to state specific facts that point to a real possibility of constitutional error or that would entitle him to relief in a proceeding pursuant to § 2254.

Accordingly, it is RECOMMENDED that:

1) Respondent's motion to dismiss the petition be GRANTED; and

2) The petition be DISMISSED WITHOUT LEAVE TO AMEND; and

3) The Court DECLINE to issue a certificate of appealability; and

4) The Clerk be DIRECTED to close the case.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections. The Court will

then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **January 3, 2012**

/s/ **Barbara A. McAuliffe**
UNITED STATES MAGISTRATE JUDGE